2 So.2d 468

### ADAMS v. STATE.
### 4 Div. 642.

Court of Appeals of Alabama.

May 20, 1941.

R. S. Ward, of Geneva, for appellant.

Thos. S. Lawson, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant was convicted of the offense of petit larceny—it being alleged in the indictment, and the jury finding, that he "feloniously took and carried away two rolls of wire fence, of the value of Twenty Two Dollars, the personal property of A. S. Griffin." Code 1928, Sec. 4908, Code 1940, Tit. 14, § 334.

The evidence in the case was entirely circumstantial; and the following comment by the learned trial judge, as taken from his oral charge to the jury, is in every sense correct, to-wit: "it is simply a question of fact to be determined by this jury as to whether or not this defendant, Curtis Adams, did steal the property, or some of the property, alleged in this indictment belonging to A. S. Griffin."

It was plainly shown that somebody feloniously took and carried away Griffin's said wire. And in undertaking to fasten guilt upon this appellant, the State used as one of its principal witnesses one George Paul—without whose testimony it is not possible for us to say whether or not appellant would have been convicted.

Upon the cross-examination of George Paul by defendant's (appellant's) counsel these things occurred: He testified that "in September of last year (when Griffin's wire was stolen, as alleged in the indictment, we interpolate) I lived on Curtis Adams' place. I was farming with Curtis Adams last year. I am not with him this year (the year of the trial). The state of my feelings toward Mr. Adams is all right as far as I know. I know it is all right."

The following questions, answers, objections and exceptions then appear in the bill of exceptions, to-wit: "Q. (by defendant's counsel) You had an argument with him and a falling out with him about some peas?

"Mr. Mizell (the Solicitor prosecuting for the State): We object.

"The Court: Overrule it.

"A. No, he had an argument with me, I didn't have one with him.

"Q. (by defendant's counsel) You got onto him about not buying any hog wire?

"Mr. Smith (the County Solicitor, assisting in the prosecution): We object.

"The Court: Sustain the objection.

"I don't know what time it was before this occasion that he and I had an argument.

"Q. (by defendant's counsel): And if you didn't tell him in the course of that argument if he didn't buy you some wire you were going to make him regret it?

"Mr. Mizell: We object.

"The Court: Sustain the objection.

"Mr. Ward: (Attorney for defendant, appellant): We reserve an exception."

Now anent the last foregoing objection, and exception, we believe it not out of place to borrow and adopt the observations (and quotations) made by Judge Simpson in his opinion for this court in the case of Sowell v. State, 199 So. 900, 901, to-wit:

"Generally, anything which tends to show bias or inclines the witness to swear against a party is relevant for impeachment. Louisville & N. R. Co. v. Courson, 234 Ala. 273, 174 So. 474, 476; Nelson v. State, 11 Ala. App. 221, 65 So. 844; Pelham v. State, 22 Ala.App. 529, 530, 117 So. 497; Byrd v. State, 17 Ala.App. 301, 302, 84 So. 777.

"Hostile feeling shown to be malignant, reflects greater discredit to the witness than that generated by a sudden quarrel. So, proper inquiry is allowed to test the extent of the hostility of such witness. Legitimate cross-examination to elicit such proof is proper. Fincher v. State, 58 Ala. 215, 220.

"Upon such inquiry, any circumstance which might reasonably show bias or hostility is admissible upon cross-examination for consideration of the jury. 2 Wigmore on Evidence, 2nd Ed., Sections 948, 949, 950. This principle was skilfully dealt with by Mr. Justice Thomas of our Supreme Court in Adler v. Miller, 218 Ala. 674, 679, 120 So. 153, and excellently restated by Mr. Chief Justice Gardner of that court in Louisville & N. R. Co. v. Martin [240 Ala. 124], 198 So. 141, 144. As so well set forth in these cases (quoting Wigmore, supra, Section 949, p. 332): 'The range of external circumstances from which probable (probably) bias may be inferred is infinite. Too much refinement in analyzing their probable effect is out of place.'

"It is also a part of our statute law that every party has the right of cross-examination, thorough and sifting, of the witnesses who testify against him. Code 1923, Section 7731 [Code 1940, Tit. 7, § 443]."

As stated hereinabove, we are not able to say that without the testimony of George Paul appellant would have been convicted. His testimony was most dam-

aging to appellant. The extent to which a witness may properly be cross-examined as to collateral circumstances tending to prove bias or interest depends in some instances—and clearly here, in our opinion—upon the importance of his testimony, and whether his testimony is of a nature to be seriously affected by prejudice, bias, hostility, or interest. Louisville & N. R. Co. v. Martin, supra, 240 Ala. 124, 198 So. page 147; 74 A.L.R. note, page 1160.

The case was simple; and tried with skill. But for the error in abridging the appellant's right of cross-examination of the important State's witness George Paul—as we have indicated hereinabove—the judgment of conviction is reversed, and the cause remanded.

Reversed and remanded.