178 So.2d 649

Lola LEWIS

v.

STATE.

8 Div. 960.

Court of Appeals of Alabama.

Sept. 14, 1965.

Smith, Johnston & Walker and Earle B. Self, Huntsville, for appellant.

Richmond M. Flowers, Atty. Gen., and Owen Bridges, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Lola Lewis was indicted for first-degree murder of her husband, Ira Talley Lewis. She was convicted of manslaughter in the first degree and sentenced to eight years in the penitentiary.

The Attorney General has moved to strike the transcript of the testimony; to strike the transcript of the record and to dismiss the appeal, because not filed within the time required by law.

The judgment of conviction was entered on September 26, 1963. On October 24, 1963 defendant filed a motion for a new trial. On that day it was called to the court's attention and was continued by the court to November 15, 1963. It was regularly continued thereafter, the last order of continuance, dated January 20, 1964, being to February 14th. The court's order overruling the motion is as follows:

> "Comes now the State of Alabama, by its Solicitor, and also comes the defendant, by her attorney, and submits to the Court the motion of the defendant filed herein on the 24th day of October, 1963, together with the amendment to said motion filed herein on the 13th day of January, 1964, to set aside the verdict of the jury and the judgment of the court rendered thereon on the 26th day of September, 1963, and to grant to the defendant a new trial.

> "Upon consideration of said motion, as amended, and upon the affidavits filed in this cause, relative to the conduct of two of the jurors in said case during said trial, it being agreed between the State and the Defendant that as pertaining to the misconduct of said jurors, the question is submitted upon the affidavits as aforesaid, the Court

is of the opinion that the same is not well taken and should be overruled.

"IT IS, THEREFORE, ORDERED AND ADJUDGED by the Court that said motion, as amended, be and the same is overruled and denied and to this action, and order of the Court, the defendant in open court duly excepts.

> "DAVID R. ARCHER
> David R. Archer
> Circuit Court Judge"

It is the state's insistence that because the record fails to show an order on February 14, continuing the motion to February 27th the court was without jurisdiction to act on the motion at the time it was overruled.

In Birmingham Railway, Light & Power Company v. Hinton, 146 Ala. 273, 40 So. 988, the court said:

> "If the failure of the record to show an order on January 7, 1905, continuing the motion for a new trial until the 14th day of the same month, operated as a discontinuance, yet the motion was heard and decided upon the merits, without objection on the part of the appellant, so far as the bill of exceptions discloses, or without any claim or contention that the court was without authority to entertain the motion at the time it was granted. This was a waiver of the discontinuance, if any existed."

See also Pate v. State, 244 Ala. 396, 14 So. 2d 251; Moore v. Ashe, 269 Ala. 359, 113 So.2d 678.

The court's order states that the solicitor was present and took part in the proceedings at the hearing on the motion. No claim was made that the court had lost jurisdiction over the motion for failure to keep it alive by proper orders of continuance. We hold the court's order was not void for lack of jurisdiction. Having reached this conclusion, we express no opinion as to the proceeding filed by defendant, in answer to

the state's motion, which seeks to show that the motion was actually heard on February 14th, the day to which it was last continued, and by the court taken under submission or advisement, with judgment rendered on February 27th.

The court reporter's transcript of the evidence was filed with the circuit clerk on April 21, 1964, within sixty days after the court's ruling on the motion. The full record was timely filed here on June 19, 1964. Relf v. State, 267 Ala. 3, 99 So.2d 216. The Attorney General's motion is denied.

The state introduced as a witness Dr. Cowart who testified the defendant was his patient and that he saw her at the hospital the night her husband was killed. She was hysterical and emotionally upset, but was not psychotic or insane. That night he administered a drug, a central nervous system depressant, because of her nervous and upset condition, and another dose was given about 11:15 the following morning. The maximum effect of the drug lasts from four to six hours. The dosage given the defendant would not cause hallucinations or delusions. When the doctor entered the room at about eleven the next morning a uniformed policeman was at the door and another policeman was talking to Mrs. Lewis.

On cross-examination the witness testified he gave orders for the drug to be given every six hours, but the nurse's notes at 6:00 o'clock read that the patient was asleep and there was no record of medication at that time. The fact that the patient was asleep and inactive would tend to increase the sedative effect of the drug in the average patient. The policeman had a pad and was talking to the patient and making notes. The patient was calm and asked the doctor about the condition of her husband. When the doctor told her he was dead she became hysterical. At 10 A.M. the residual effect of the drug would have been greater than at eleven o'clock.

The doctor stated he had treated the defendant regularly since 1957. He testified that when he walked into the room around eleven o'clock and found the policeman there scribbling she was, in his opinion, capable of discussing issues of importance to herself but that she was not capable of doing so when he first saw her after the shot. At eleven o'clock there was still some of the drug present and some hangover effect from the drug. She was anxious and upset. By "anxious" he meant that as soon as he opened the door she turned to him and expressed concern as to the condition of her husband.

Thereupon the record shows the following:

"Q. Was there anything else that made her look anxious?

MR. YOUNGER: We object to that.

THE COURT: Sustain the objection

MR. SMITH: We except

MR. YOUNGER: He is just fishing, Judge.

THE COURT: Well, I know that he is.

MR. SMITH: We object to the Solicitor's statement that he is fishing, and to the statement of the Court before the jury that he knows it was. We except to that.

THE COURT: Then the Court will restrict the cross-examination.

MR. SMITH: We would like to move for a mistrial on that basis.

THE COURT: Well, of course, the Court will overrule and will not grant it. The Court will say this: Unless you restrict your cross-examination to the examination on the direct examination, then the Court will not allow you to cross-examine in that respect.

MR. SMITH: We except to that ruling of the Court, overruling our motion for a new trial.

MR. WALKER: That is all.

MR. THOMAS: That is all."

 The settled rule in Alabama is that "cross-examination is not limited to matters brought out on direct examination of a witness, but extends to all matters within the issues of the case." Madden v. State, 40 Ala.App. 271, 112 So.2d 796; Johnson v. State, 42 Ala.App. 511, 169 So.2d 773.

The court's ruling restricting the right of cross-examination requires a reversal of this cause.

Several other questions are argued in brief as constituting error. They are not likely to occur in the event of another trial. In view of our decision that the cause must be reversed because of the ruling discussed above, we reserve consideration of these additional questions.

Reversed and remanded.