The defendant was convicted for robbery in the first degree and sentenced as an habitual offender to life imprisonment without parole.
 I
The defendant argues that the trial judge erred in refusing to allow defense counsel to cross examine the two victims about a civil suit they had filed against county officials for permitting the defendant's escape from county jail.
On February 11, 1982, the defendant and two other inmates, William Dale Jaeger and Kenneth White, overpowered a guard and escaped from the Morgan County Jail. They stole a county truck and drove to the home of Mr. and Mrs. Jimmy Shields in Cullman County. The defendant robbed Mr. Shields at gunpoint and raped Mrs. Shields. After tying up Mr. and Mrs. Shields, the three escapees left in Mr. Shields' automobile. *Page 545 
On cross examination of Mr. Shields by defense counsel, the following occurred:
 "Q. Have you retained an attorney to institute an action on your behalf, a legal proceeding on your behalf?
 "MR. NEIZER (Assistant District Attorney): Objection, Your Honor.
"THE COURT: Do you want a conference?
"MR. BRUNNER (Defense Counsel): Yes, sir."
The record only reveals that "there was an off-the-record discussion held between court and counsel at the bench." There is no ruling on this particular question contained in the record and defense counsel did not pursue this matter with Mr. Shields.
On cross examination of Mrs. Shields, defense counsel inquired:
 "Q. (By Mr. South): Have you retained an attorney to file a lawsuit against the Morgan County Commission and the Morgan County Sheriff's Department?
"A. Yes, Sir.
"MR. NEIZER: Objection, Your Honor."
The trial judge sustained the State's objection, granted the State's motion to exclude and instructed the jury to disregard. The judge further inquired if "there (are) any of you (jurors) that can't do that, raise your hand."
A conference was held in the judge's chambers. Defense counsel introduced a copy of the complaint in the suit filed by Mr. and Mrs. Shields against various county officials for negligent maintenance of the jail in allowing the defendant and his two companions to escape. Defense counsel argued that since the suit was for damages the Shields "have a financial interest in seeing the defendant is found guilty", and therefore evidence of the suit should be admissible for impeachment purposes.
The trial judge refused to allow defense counsel to pursue this line of cross examination.
 "THE COURT: I will rule it out, now, the defendant's Exhibit A (the complaint), because, the prosecuting witness, Mr. Shields nor his wife have filed suit against this defendant or either of the other two supposeded co-defendants, White or Jaeger. If the suit named either one of them I would allow it in for whatever consideration the jury would give it, bias, prejudice against this defendant, since the defendant in our criminal case is not a party defendant in this civil action, their Summons and Complaint in Morgan County Circuit I will rule it out."
On appeal, the State argues that the trial judge did not abuse his discretion in disallowing this line of cross examination because (1) the defendant was not an actual party to the civil action, (2) defense witness Jaeger freely admitted that the two escaped, (3) "citizens are starting to realize that they can sue and win against officials who either knowingly or negligently turn dangerous people loose on the street", (4) "the fact that the injured party sues the negligent party does not show prejudice or bias against the criminal defendant", and (5) the fact that the defendant raped Mrs. Shields "biased or prejudiced Mr. and Mrs. Shields against appellant far more than any other fact which could have been brought to the jury's attention."
It is undisputed that it is error for the trial judge to refuse to allow defense counsel to show that a State's witness has brought or is contemplating a civil action for damages against the defendant growing out of the same transaction upon which the criminal prosecution is based. Ex parte Brooks,393 So.2d 486 (Ala. 1980); Gunn v. State, 387 So.2d 280
(Ala.Cr.App.), cert. denied, Ex parte Gunn, 387 So.2d 283 (Ala. 1980); Ferguson v. State, 40 Ala. App. 389, 114 So.2d 302
(1959); Cabel v. State, 18 Ala. App. 557, 93 So. 260 (1922).
Although these cases involve situations where the witness had filed a civil suit against the defendant, we do not think the rule is limited only to that situation to the exclusion of suits against third parties.
In Ex parte Brooks, 393 So.2d at 487, our Supreme Court stated:
 "The case law of this state has consistently held the institution of a civil suit arising *Page 546 
out of the same facts as a criminal prosecution to be within the permissible scope of cross examination to show bias on the part of the witness. This rule is augmented by the public policy of this state as codified in Section 12-21-137, Code 1975, which mandates the right of every party to a `thorough and sifting' cross examination of the opponent's witnesses.
 "The general rule, from which the more narrow rule here under consideration evolved, is stated in Green v. State, 258 Ala. 471, 64 So.2d 84 (1953):
 "It is always competent on cross examination to make such interrogation of a witness as would tend to test his interest, bias or prejudice or to illustrate or impeach the accuracy of his testimony.
 "In the discharge of its fact finding functions the jury's search for the truth includes the paramount right to consider a witness's motivation, and any evidence testing `his interest, bias or prejudice' so as to `illustrate or impeach the accuracy of his testimony' is a competent, material and relevant subject of cross examination, and the jury's right to be given such evidence is, of itself, part of the fact finding process." (citations omitted).
The general rule has not been limited to civil actions brought by the witness against the defendant. In Lodge v. State,122 Ala. 97, 26 So. 210 (1899), it was held that defense counsel should have been permitted to cross examine the fourteen-year-old witness about another pending criminal prosecution against the defendant commenced by the child's father. In Prince v. State, 100 Ala. 144, 14 So. 409 (1893), it was stated: "We think it safe to hold that when an employee is testifying, it may be shown that his employer is interested in the prosecution." The court held that defense counsel should have been able to ask one of the State's witnesses if "the company you are working for is taking any interest in the prosecution of the defendant." In Malone v. State,358 So.2d 490 (Ala.Cr.App.), cert. denied, 358 So.2d 494 (Ala. 1978), it was also held that the defendant should have been allowed to show on cross examination of the State's witnesses, who were employees of the company from which the defendant was charged with embezzling funds, that their employer had filed a civil suit against the defendant based upon the same conduct as that for which the defendant was being tried. See also State v.Whyde, 30 Wn. App. 162, 632 P.2d 913 (Wash.App. 1981), wherein it was held that in a prosecution for rape the defendant, who managed the apartments, should have been permitted to show that the victim had threatened to sue the owner of the building over the incident if she did not get her damage deposit back. InArnold v. State, 163 Ga. App. 10, 293 S.E.2d 501, 504-505
(1982), it was held that, in a prosecution for pandering by soliciting a fourteen-year-old female to perform an act of prostitution, defense counsel should have been permitted to cross examine the victim as to whether she was aware that a $3.5 million damage suit had been filed against her father as a result of an incident relating to the facts in the prosecution.
In accordance with the above, we find that the judge's refusal to allow defense counsel to cross examine the victims about a civil suit they had filed against county officials was error. However, we find that the error was harmless under the particular facts of this case.
We are aware of the holding in Brooks, 393 So.2d at 488, that the cumulative evidence rule has no field of operation in the context of a case such as this one where no other evidence of the witness's institution of a civil action has been proffered.
There is evidence in this case which would arouse the bias and prejudice of both victims against the defendant. Here, not only the victims were mistreated but their children were also threatened. Mrs. Shields, although disabled with muscular dystrophy, was raped by the defendant and one of his companions. The defendant was an acquaintance of both victims.
William Jaeger testified for the defense. He admitted that he, the defendant and White escaped from the county jail and went to the Shields' home. Although denying *Page 547 
that he robbed Mr. Shields or took his automobile, on cross examination, Jaeger admitted that he had pled guilty to robbery, theft of property (for stealing the Sheriff's truck and the car from Mr. Shields), and escape — all the charges stemming from this incident.
Jaeger testified that Mr. Shields paid the defendant some money he owed him and that Mr. Shields had also offered the trio his car. While this Court does not weigh the credibility of witnesses, Jaeger's testimony is so incredible it warrants notice.
In rebuttal, the State showed that Jaeger had admitted his involvement in robbing Mr. Shields to Cullman County Deputy Dennis Spradlin after his arrest. The State had previously shown that, when the defendant was arrested, Mr. Shields' money and driver's license were found in his possession.
Here, the defendant's conviction was not admissible in the Shields' civil suit against the county officials. See C. Gamble, McElroy's Alabama Evidence, Section 269.06 (1) (3rd ed. 1977). The testimony of both victims leaves no doubt as to their bias or feelings toward the defendant. Evidence of the institution of a civil suit for damages could scarcely have affected their impression. Commonwealth v. Colacino,89 Pa. Super. 269 (1926); Oldham v. Commonwealth, 136 Ky. 789,125 S.W. 242 (1910); Sullivan v. United States, 404 A.2d 153
(D.C.App. 1979). Reversing and remanding this case for a new trial would be a useless but expensive and time consuming gesture. We have no doubt that the jury's knowledge of the victims' civil suit against the defendant would in no way affect their decision regarding the defendant's guilt. "Error which might be prejudicial in a close case does not require a reversal when evidence of guilt is strong." Tinker v. State,389 So.2d 597, 600 (Ala.Cr.App. 1980). This Court will jealously guard the defendant's right of cross examination, yet an appellate court may decline to reverse for constitutional error if it finds that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24,87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). See Handley v. State,214 Ala. 172, 175, 106 So. 692 (1926), where our supreme court held that the refusal to permit the accused to show that the insurance companies had retained special counsel for the State in a murder prosecution was not reversible error. Frazier v.State, 365 So.2d 339 (Ala.Cr.App. 1978), holding that error in precluding cross examination of a witness to show bias and prejudice by fact that defendant had caused witness to be placed under arrest or bond did not require reversal where, on the entire record, it did not appear that the denial injuriously affected the substantial rights of the accused.
If we had any doubt that the error in this case would have influenced the jury's verdict, we would not hesitate to reverse. However, under the circumstances of this particular case, we find the error harmless.
 II
Evidence of the defendant's escape from the county jail was admissible under the res gestae or continuous transaction exception to the general rule against the admission of evidence of the accused's commission of crimes not charged in the indictment. McElroy, Section 69.01 (3).
 III
The trial judge denied the defendant's motion to sequester the jury. Under Section 12-16-9 (d), Code of Alabama 1975 (effective May 4, 1982), "(i)n the prosecution of any noncapital felony the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial." Under this section, the consent of the accused and his counsel and the prosecuting attorney, in a noncapital felony case, is not required before the trial judge may permit the jury to separate during the pendency of the trial.
The presumption of prejudice arising from the separation of the jury during a trial arises only when that separation is unlawful. Annot. 72 A.L.R.3d 131, Section 21 (1976). A separation authorized or permitted *Page 548 
by law will not create a presumption of prejudice to the accused. The rule is accurately stated in 72 A.L.R.3d at 168:
 "(A) separation of the jury during the progress of a criminal trial in violation of an applicable statute, rule, or order of court against separation, and under circumstances that might expose the jurors to improper influences, creates a presumption of prejudice to the defendant, placing the burden on the prosecution to show that no injury resulted, or could have reasonably resulted from such separation." (emphasis added)
Here, the separation was authorized by Section 12-16-9 (d) and no prejudice is presumed. Since none was shown, we find no cause for error.
The judgment of the circuit court is affirmed.
AFFIRMED.
HARRIS and HUBERT TAYLOR, JJ., concur.
TYSON and SAM W. TAYLOR, JJ., concur in result.